**Beryl I. LINDSEY, Successor to Howard E. Lindsey, Respondent,**

v.

**John L. TAYLOR, Appellant.**

**No. KCD 27311.**

Missouri Court of Appeals,
Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 30, 1976.

Application to Transfer Denied
Oct. 12, 1976.

Aaron A. Wilson, City Atty., Dan G. Jackson, III, Asst. City Atty., Kansas City, for appellant.

Charles C. Shafer, Jr., A. Howard Chamberlin, Kansas City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

This appeal involves the review of an administrative decision by the Personnel Board of the City of Kansas City. The circuit court held the decision of the Personnel Board was not supported by substantial

and competent evidence and reversed the order which found Howard Lindsey had resigned his city employment. Affirmed.

Howard E. Lindsey was employed by the City of Kansas City in the Park Department as the clubhouse manager of Swope Park Golf Course Number 1 and Number 2. John L. Taylor was the City Manager of the City of Kansas City at the time Lindsey's appeal to the Personnel Board was made. After the decision of the Personnel Board, Lindsey died and while this matter was pending in the circuit court on appeal from the decision of the Personnel Board, his wife, Beryl I. Lindsey was substituted in his stead.

Lindsey had an outstanding record with the Park Department for a number of years until May, 1971. At that time some friction developed between Lindsey and the head of the Park Department, Frank Vaydik.

There was no dispute as to the facts before the Personnel Board. Lindsey had been off work on sick leave the first part of May, 1971, and was scheduled to return to work on May 20. Shortly prior to that time, Lindsey requested a hearing before Vaydik and the business manager of the Park Department concerning his claim for compensatory time off as a result of overtime he had worked the previous year. The operation of a golf course involved long hours during the summer, but, of course, the activity was greatly reduced in the winter time. Lindsey felt he had worked excessive hours in the summer and wanted more time off in the winter.

When this disagreement concerning time off was not satisfactorily resolved as far as Lindsey was concerned, he notified Vaydik he was not going to report to Minor Park, where he had been reassigned from Swope Park. Lindsey requested a leave of absence without pay in order to try to get his grievance settled, but Vaydik denied this. Lindsey then requested to be placed on sick leave status and presented a doctor's letter, but Vaydik denied this also.

Following these requests and denials, Vaydik wrote Lindsey on May 25, 1971, as follows:

"You are hereby directed once again to report for work at your assigned duty station. Failure to do so within 24 hours of receipt of this letter will result in your being considered absent without authorized leave and in that event, appropriate steps in accordance with the personnel rules and regulations will be taken."

After Lindsey failed to report and on May 28, Vaydik caused a form to be filed with the Personnel Department of the City stating that Lindsey was deemed to have resigned in accordance with Section A8.24 of the City's Administrative Code because he had been absent without authorization on May 21, 22, 23, 24 and 27. This Section provided:

"Sec. A8.24. Absence without leave.

"Any unauthorized absence of an employee from duty shall be deemed to be an absence without pay and may be made grounds for disciplinary action by the department head. In the absence of such disciplinary action, any employee who absents himself for three (3) or more days without authorized leave shall be deemed to have resigned. Such absence may be covered, however, by the department head by a subsequent grant of leave with or without pay where extenuating circumstances are found to have existed."

On May 28, Lindsey was advised by the City's Personnel Director that he was no longer an employee of the City because he had "resigned himself" under the terms of Section A8.24. Lindsey thereupon filed an appeal to the Personnel Board of Kansas City. After hearing evidence, the Personnel Board found Lindsey "refused to go to work for five consecutive working days after having been advised that this would be considered absence without authorized leave." The Board concluded that Lindsey was properly deemed to have resigned under the provisions of Section A8.24.

■ The scope of review of an administrative order includes "a determination of whether the decision is authorized by law and is supported by competent and substantial evidence upon the whole record." *Mer-*

*ritt v. State Hospital No. 1, Fulton,* 403 S.W.2d 940 (Mo.App.1966). If not so supported, the decision cannot stand.

■ The City raised before the Personnel Board, and makes the same objection in this court, that under Section A8.24 the City does not terminate an employee but the action is on the part of the employee. Therefore, the City argues it has not terminated the employee and thus he is entitled to no administrative review. The Personnel Board rejected this argument and held the filing of a report of resignation would constitute a removal. The Board further pointed out to hold otherwise would deny the employee any administrative review of the facts surrounding his termination, including the determination of whether in fact he was absent for three or more days without authorization. In that view, the Personnel Board was correct and this court holds the filing of report of resignation on the grounds that an employee was absent without authorization for three or more days does constitute a removal which gives rise to a right of appeal by the employee.

■ On the question of unauthorized absence on the part of Lindsey, the City insists that his refusal to report to his new post at Minor Park, despite being ordered to do so by Vaydik, constituted the required absence to support a finding that he was deemed to have resigned. On the other hand, Lindsey urges that he could not be considered to have resigned when he was asking for leave without pay or sick leave almost every day he was absent.

Neither of these contentions reach the only question on this appeal—was there evidence from which the Personnel Board could have found Lindsey was absent without authorization three or more days? To constitute evidence under Section A8.24 to find Lindsey was deemed to have resigned, there had to be evidence his absence was unauthorized on the days mentioned in Vaydik's report. The only evidence concerning Lindsey's status as to unauthorized absence was the May 25 letter. The statement made by Vaydik there reveals the City did not consider Lindsey's absence to

be unauthorized until twenty-four hours after Lindsey received Vaydik's letter of May 25. The evidence is undisputed that Lindsey received this letter at about 1:30 P.M. on May 26. Obviously, twenty-four hours thereafter would be 1:30 P.M. on May 27. Thus, although Lindsey was absent more than three days, the City did not consider him to be absent without authorization until May 27.

It is evident that Lindsey was not absent without authorization on the days mentioned as found by the Personnel Board. At most he had only been absent without authorization for one day. In this circumstance the finding of the Personnel Board is not supported by substantial and competent evidence and was properly reversed by the Circuit Court.

The judgment reversing the order of the Personnel Board is affirmed and the court is directed to enter a judgment finding that Howard Lindsey did not resign his employment with the Park Department of the City, and ordering that he be reinstated as an employee from May 28, 1971, to the date of his death.

All concur.