Howard M. ACKERMAN and Barbara F.
Ackerman, his wife, et al.,
Plaintiffs-Appellants,

v.

CITY OF CREVE COEUR, a Municipal
Corporation, et al.,
Defendants-Respondents.

No. 38005.

Missouri Court of Appeals,
St. Louis District.

June 14, 1977.

James P. Finnegan, Jr., St. Louis, for plaintiffs-appellants.

Merle L. Silverstein, St. Louis, J. Leonard Walther, Clayton, for defendants-respondents.

DOWD, Judge.

In this action plaintiffs, residents of Runnymede subdivision in the City of Creve Coeur on their own behalf and as representatives of the other residents of the subdivision as a class, sought a declaration that

§ 9G.4.B of the zoning ordinance of Creve Coeur does not permit an access road across a required rear yard adjacent to the subdivision, and an order restraining the defendant Planning and Zoning Commission from approving the road and the defendant Royalway Development Co. from constructing it. The Circuit Court of St. Louis County found in favor of defendants. We remand, with instructions to dismiss the petition.

On April 13, 1959, the comprehensive Zoning Ordinance of the City of Creve Coeur, Ordinance No. 225, became effective. On October 26, 1970, Ordinance No. 556 amended the comprehensive ordinance by establishing the "O" Central Core Business District.

Preliminary plans for the development of the Creve Coeur Estates Condominium Project, later renamed Coeur de Royale Condominiums, on a lot in the "O" district, were presented to the Creve Coeur Planning and Zoning Commission, which recommended their approval on May 8, 1973. At subsequent meetings of the commission throughout the remainder of the year, revised preliminary plans were submitted. Members of the subdivision, which lies directly south of the lot to be developed, appeared on occasion to express concern that the rear access road planned for the condominium project would funnel traffic onto Magna Carta Drive, which runs through the subdivision.

The rear of the condominium project lot lies adjacent to a small portion of the subdivision's northern border. Magna Carta Drive, beginning at an intersection with Ballas Road, runs east, for a short distance along the northern border of the subdivision and half of the southern border of the condominium lot. At that point, Magna Carta enters the subdivision, turning southeast and running in that direction to the southern entrance of the subdivision at Ladue Road, where it ends. The other half of the condominium lot's southern border coincides with a portion of the subdivision's northern border.

The instant suit was filed on February 16, 1974, seeking declaratory and coercive relief. Plaintiffs alleged that the rear yard requirement of that portion of the zoning ordinance regulating the "O" Central Core Business District, prohibited the building of an access road onto Magna Carta Drive. The section states:

"§ 9G4.B. Side and rear yards—no direct limit, except where a lot line coincides with a lot line in an adjacent residence district, then such yard should be landscaped on the residential side with natural plantings and/or a six (6) foot high solid wall or fence provided, as reviewed and approved by the Planning and Zoning Commission. Side and rear yards to fifty (50) feet shall be maintained when adjacent to a residential district; there shall be no automobile parking in this area."

Defendant developer filed a motion to dismiss on March 6, 1974, alleging, inter alia, plaintiffs' failure to exhaust their administrative remedies under Chapter 536, RSMo. The motion was overruled on October 14, 1974.

At the Planning and Zoning Commission's regular meeting on April 15, 1974, final plans for the condominium project were examined, and unanimous approval was given for the issuance of a building permit. Since the issue of the access road's legality under the ordinances was pending, its construction was not begun.

Trial began on January 21, 1976, and on February 10, 1976, the court entered its order in favor of defendants, finding that plaintiffs were not entitled to any injunctive relief, that the Planning and Zoning Commission had the power to approve defendants' plans, and that the ordinance in question does not prohibit the proposed access road. Plaintiffs bring this appeal.

■ At the outset we are bound to examine the procedural route followed by this case. Compliance with the statutory procedure designed for cases of this nature is a jurisdictional matter, and we must determine jurisdiction prior to any discussion of the substantive issue raised. *Randles v. Schaffner*, 485 S.W.2d 1, 2 (Mo.1972); *Lafayette Federal Savings and Loan Assn. of*

*Greater St. Louis v. Koontz*, 516 S.W.2d 502, 504 (Mo.App.1974); *American Hog Company v. County of Clinton*, 495 S.W.2d 123, 125 (Mo.App.1973). Finding that the plaintiffs have not so complied, we must conclude that the proceedings before the trial court lacked jurisdiction and are therefore void. *Randles*, supra at 2; *Brogoto v. Wiggins*, 458 S.W.2d 317, 319 (Mo.1970); *Lafayette*, supra at 504.

Section 536.050 RSMo 1969 provides that courts may render declaratory judgments "respecting the validity of rules, or of threatened applications thereof, and [that] such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented." This remedy is not available to plaintiffs, since their action is not directed against a "rule" as defined in Rule 100, *American Hog*, supra at 126, and since the provisions of Chapter 536 and its corresponding Rule 100 are not applicable to agencies whose own separate review procedures are provided in other statutes. *American Hog*, supra at 126–27. See *Brogoto*, supra at 319; *Cohen v. Ennis*, 314 S.W.2d 239, 244 (Mo.App.1958).

Plaintiff in *American Hog* was advised by the county Planning Commission that its livestock confinement feeding operation was in violation of a county ordinance, and that plaintiff must bring its operation into conformance. Instead of appealing the ruling to the County Board of Zoning Adjustment as directed by § 64.660, a planning and zoning statute applicable to class two and three counties, plaintiff brought a declaratory judgment action seeking a determination that its operation was acceptable as a nonconforming use. The issue was found against plaintiff, and he appealed. The reviewing court held first that, while § 536.050 authorizes declaratory judgment actions respecting the validity of an administrative rule or its threatened application, plaintiff's action was not directed against a "rule", defined in § 536.010 as one "of general application and future effect". Plaintiff's controversy with the county agency was properly designated a stage of a "con-

tested case" as defined in § 536.010. The procedure available to plaintiff would have been that described in § 536.100 and Rule 100.03, for review of contested cases, except that § 64.660, providing for comparable review in plaintiff's specific case, was applicable. The Court held further that plaintiff's action was not authorized under the Declaratory Judgment Act, § 527.020, since the declaratory judgment procedure could not be used where a specific statutory method of review is provided. The court quoted 26 C.J.S. Declaratory Judgments § 20, which states:

"As a general rule where a statute provides a special form of remedy for a specific type of case, the statutory remedy must be followed, and under such circumstances a declaratory judgment will not be granted."

The case was remanded with instructions to dismiss the plaintiff's petition.

*American Hog*, supra, applies here. First, plaintiffs' action was not directed against a "rule" as it is defined. For its definition we are directed by Rule 41.02 to consult Rule 100.01, which states:

"(2) 'Agency Rule' includes *every regulation, standard, or statement of policy or interpretation of general application and future effect*, including the amendment or repeal thereof, adopted by an agency, whether with or without prior hearing, to implement or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include regulations concerning only the internal management of the agency and not directly affecting the legal rights or privileges of, or procedures available to the public." (emphasis added).

Plaintiffs in this case are not challenging the validity or threatened application of a rule of general application and future effect, but a decision respecting a specific set of facts and effective only as to those facts.

Secondly, a specific statutory procedure was available to plaintiffs. Chapter 89 concerns itself specifically with zoning and planning in all cities, towns and villages of the state, § 89.010, and thus provides the

procedural framework within which plaintiffs may act. Pertinent portions of this chapter relating to a Board of Adjustment are included in the Creve Coeur Comprehensive Zoning Ordinance, Article 21, and provide for an appeal from the decision of the Planning and Zoning Commission to the Board of Adjustment, § 89.100 and Section 21.3(a) to (c) and from the decision of the Board of Adjustment to Circuit Court, § 89.110 and Section 21.6. Declaratory judgments are not provided for in the statutory scheme of Chapter 89.

Plaintiffs argue that the holding in *Evans v. Roth*, 356 Mo. 237, 201 S.W.2d 357 (banc 1947) authorizes their action. In that case, however, the pertinent statute and ordinance did not provide an adequate procedure by which plaintiffs could file a complaint with a building inspector or cause him to carry on an inspection which would have revealed an illegal use of property. Plaintiffs were therefore granted the injunction they sought. The court made clear, however, that "if the plaintiffs had an adequate statutory remedy, the procedure prescribed therefor would be exclusive." 201 S.W.2d at 360.

Thus plaintiffs' proper course was to await the Planning and Zoning Commission's final approval of the developer's plans, which came two months after this suit was filed, and then appeal the decision to the Board of Adjustment. Such an appeal would have halted all proceedings on the access road, § 89.100 and Section 21.3(6), until final disposition of the issue of its legality under the ordinance. Since plaintiffs failed to follow the appropriate statutory procedure, we find ourselves and the court below without jurisdiction to decide the issue.

This cause is remanded with instructions to dismiss plaintiffs' petition.

CLEMENS, P. J., and SMITH, J., concur.