J. Wayne WILLEY, Plaintiff-Appellant,

v.

CASS COUNTY, Missouri, et al.,
Defendants-Respondents.

No. WD 35692.

Missouri Court of Appeals,
Western District.

Feb. 5, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and
Denied April 2, 1985.
Application to Transfer Denied
May 29, 1985.

Richard G. Carlisle, Freilich, Leitner & Carlisle, P.C., Kansas City, for plaintiff-appellant.

Cathleen A. Shine, Cass County Pros. Atty., Harrisonville, Dale L. Beckerman, Deacy & Deacy, Kansas City, for respondents, Cass County, Missouri, Cass County Planning Commission and Robert Prettyman, Chairman.

John C. Milholland, Harrisonville, for respondent, Anderson.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

This appeal deals with the denial of a special use permit for a sanitary landfill. Plaintiff/appellant, Willey, applied for this permit with the defendant/respondent, Cass County Missouri Planning Commission. The area for the proposed landfill is classified as agricultural allowing a sanitary landfill by special permit, but not by right. The site, which is near the towns of Raymore and Peculiar, Missouri, would have been used for trash hauled from Kansas City. After a public hearing, the Commission denied the permit, Willey sought judicial review pursuant to the provisions of the Missouri Administrative Procedure Act, Chapter 536 RSMo. The trial court affirmed the Commission's decision.

On appeal Willey contends the error was on a question of law or the application of law to facts, and that there was no issue about the facts. Willey however, only asks for the general standard of review for administrative appeals under § 536.140.2 RSMo 1978. Under this law, review is ordinarily limited to whether or not the agency's action was supported by competent and substantial evidence on the whole record or was arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Cf. Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission*, 669 S.W.2d 548, 552 (Mo. banc 1984).

Therefore, the following finding of facts made by the Commission, and affirmed by the trial court are not in contention. The proposed site for the landfill adjoined several tracts zoned for residential use. That residential property would be devalued out of proportion to any advantage shown from locating a landfill at that site. The landfill

would increase truck traffic to the detriment of Cass County citizens, and impose an undue burden on those taxpayers without any increase in tax revenues. Finally, there was no satisfactory evidence of an adequate water supply or adequate fire protection for the proposed site.

■ The basic issue for this court's consideration is whether a second class county can prohibit the operation of a sanitary landfill, not having adopted a "solid waste management plan." Willey first argues that federal law established in the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901–6987 forces local governments to permit sanitary landfills unless they can show that the denial protects the general public from present and future nuisances, which would in essence place the burden of proof on the state and its subdivisions rather than on the applicant. Careful reading of the federal law finds no support on this proposition. Willey specifically cites 42 U.S.C. § 6944(a), which reads as follows:

Not later than one year after October 21, 1976, after consultation with the States, and after notice and public hearings, the Administrator shall promulgate regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps within the meaning of this chapter. At a minimum, such criteria shall provide that a facility may be classified as a sanitary landfill and not an open dump only if there is *no* reasonable probability of adverse effects on health or the environment from disposal of solid waste at such facility. Such regulations may provide for the classification of the types of sanitary landfills.

While this section provides a minimum criteria for *classification* of sanitary landfills as opposed to open dumps, there is nothing regarding the *locations* for landfills. Furthermore, Willey incorrectly implies that Missouri passed its waste disposal legislation as a result of the 1976 federal act. To the contrary, Missouri first adopted § 260.200 *et seq.* RSMo in 1972, with amendments in 1975. There is nothing in the federal law which preempts or predates the Missouri statutes.

■ Willey next contends the trial court ignored the state regulatory scheme when it affirmed the Cass County Planning Commission. Willey points to § 260.215 RSMo as requiring every city and county to implement an approved plan for solid waste management, and because Cass County has not adopted such a plan, it was without authority to deny Willey his permit. However, this contention completely ignores subsection 4 of § 260.215 which says: "Nothing contained in sections 260.215 and 260.220 shall apply to any unincorporated area in all second, third or fourth class counties ..." As a second class county, the respondents were not required to implement a plan. Subsection 4 goes on to say that any exempt county may still adopt ordinances, rules, regulating or standards for the disposal of solid wastes as provided in 260.215.2.

Although Cass County did not have a "state plan", it did have ordinances governing special use permits and sanitary landfills. Willey in his presentation to the Commission attempted to show his application would comply with those ordinances. However, the Commission in its findings found non-compliance with some of those ordinances. Willey has never contended those ordinances are not equal to or less stringent than the rules or regulations of the state. Section 260.215.2.

■ When Willey states this landfill is "badly needed", and, "this case presents a tremendous opportunity to the courts in the State of Missouri precisely to define the authority of a second class county to regulate sanitary landfills ...", he asks the judiciary to amend the statute to require Cass and similar counties to be in the state wide plan. Willey would also have those counties which fail to "opt-in" to the plan be governed by it anyway, resulting in their having no discretion to deny site permits for landfills where the department of

natural resources has shown approval and where the applicant shows its facility will be run nuisance free. With no statutory authority nor supporting case authority, this court will not accede to Willey's request.

■ Willey's second point contends the Commission abused its discretion by putting "the cart before the horse ... by making a decision and then later making findings of fact and conclusions of law which will support that decision." *Stephen & Stephen Properties, Inc. v. State Tax Commission*, 499 S.W.2d 798, 804 (Mo. 1973). Immediately after the hearing on March 9, 1982, the Commission took a vote on the application. The chair announced the vote was unanimous to deny the permit. On April 8th, Willey filed in circuit court for review of the "oral vote". On May 8, 1983 the Commission formally adopted a "decision" which included the findings of fact not here disputed. Willey asks this court to declare the "post-hoc efforts at justifying it March 9 decision a clear abuse of its discretion." Section 536.-090 requires every decision in a contested case be in writing, and the decision, "shall include or be accompanied by findings of fact and conclusions of law."

The timing and sequence of events will not per se amount to a showing of arbitrariness or abuse of discretion. In *Stephen, supra,* the agency did not make findings for some six months after the decision was made or announced. *See Hughes v. Board of Education, Charleston, Etc.,* 599 S.W.2d 254 (Mo.App.1980), (where no findings and conclusions were ever filed). As stated in *Stephen* at 804–05, several reasons behind § 536.090 are the protection against careless action, and to help the parties plan their cases for judicial review. After argument, the trial court decided this matter on January 13, 1984. The court therefore had the benefit of the findings and conclusions of the Commission. *Missouri United Methodist Retirement Homes v. State Tax Commission,* 522 S.W.2d 745 (Mo.1975), is authority for this court's refusal to reverse and remand. In

*Missouri United,* the Commission hearing was on December 1; on December 29 the plaintiff filed in circuit court, and on February 13 of the following year sought to compel the issuance of findings and conclusions, which were filed March 14. After trial on November 14 the court affirmed the findings which were not attacked in circuit court. The supreme court said no material prejudice resulted from the failure to make timely findings and conclusions by stating:

> Under these circumstances, although the Commission did not follow the clear mandate of the statute, no prejudice (other than delay) resulted to plaintiff. In preparing its amended petition for judicial review, it had the benefit of the Commission's findings of fact and conclusions of law.
>
> Also, it would be a useless and time consuming act for the Commission now to rewrite its "Decision" and attach to it a copy of the findings and conclusions previously made and file them with the Circuit Court of Lawrence County, and for the parties to again present their case to the circuit court.

522 S.W.2d at 748. *Brown v. Alberda,* 579 S.W.2d 718, 720 (Mo.App.1979).

■ Non-compliance with the mandate of § 536.090 is not jurisdictional. *Jarrett v. Hill,* 648 S.W.2d 170, 177 (Mo.App.1983). As in *Jarrett,* this court is not, however, inclined to ignore the Commission's disregard of the statute's requirements. *Id.* at 177. Although the belated findings and conclusions were within the spirit of the statute, *Greater Garden Avenue v. City of Webster Groves,* 655 S.W.2d 760, 767 (Mo. App.1983), agencies operating under this law should not use Cass County's procedure as a guide to future decision making.

■ Willey's third point is basically a rehash of his first point. He contends the Commission impermissibly based its denial *solely* on the complaints of surrounding property owners. However, the uncontested findings of fact show otherwise. Lack of adequate fire protection and water supply were among other factors considered.

Furthermore, Willey again misstates the law concerning solid waste management plans. Second class counties are *not* required to adopt such a plan in order to deny an application for a special use permit. Willey's third point is denied.

The judgment of the circuit court which affirmed the decision of the Cass County Planning Commission to deny the permit is affirmed.

All concur.